EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SALVADOR SUAZO, acusado y apelante.

Núm. 10457.—*Sometido:* Junio 16, 1944. *Resuelto:* Julio 3, 1944.

*Angel M. Villamil,* abogado del apelante; *R. A. Goméz, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

La presente es una apelación contra sentencia de la corte de distrito imponiéndole al acusado una multa de $25 por infracción a la Ley núm. 131, Leyes de Puerto Rico, 1943 (pág. 405), conocida como la Ley de Derechos Civiles de Puerto Rico. El demandado levanta dos cuestiones de derecho: (1) alega que la denuncia no aduce hechos que imputen una infracción de la ley; y (2) afirma que la Ley de Derechos Civiles es inconstitucional.

La denuncia fué radicada originalmente en la Corte Municipal. Fué jurada por un Fiscal Auxiliar del Distrito de San Juan y alega que el delito se cometió en la siguiente forma: ''Que en 14 de agosto de 1943, y en el Barrio Santurce, P. R. del Distrito Judicial Municipal de San Juan, P. R., que forma parte del Distrito Judicial de San Juan, P. R., el acusado Salvador Suazo, ilegal, voluntaria y maliciosamente y actuando para dicha fecha como dueño y administrador del negocio público El Esquife, sito en dicha Barriada

de Santurce, negó acceso e igual tratamiento en dicho Club Esquife a las siguientes personas: Paula O. de Muriel, Jorge Haddock, Sra. de Jorge Haddock, Teniente Rafael A. Muriel, Capitán Rafael Pérez García y Sra. de Pérez García, alegando dicho Salvador Suazo que le negaba a dichas personas acceso e igual tratamiento porque las mismas o sea, dichas personas eran de color, no pudiendo por tal actitud de dicho Salvador Suazo las mencionadas personas entrar al Club Esquife en dicha fecha. Hecho contrario a la Ley Núm. 131 de 1943, Sección Uno, Letra 'A'."

El apelante sostiene que el alegar que el acusado actuaba como dueño y administrador "del negocio público El Esquife" no expresa una violación de la sección 1 de la Ley núm. 131.(1) Su posición es que la frase "negocio público" es una conclusión de derecho y no una alegación de hecho, y que, para que constituya un delito bajo esta ley, es necesario que se alegue específicamente y en detalle exactamente qué clase de "negocio público" es el que se explota, con el fin de determinar si ha ocurrido dicha infracción. En apoyo de este argumento el acusado afirma que la sección 6(2) de la Ley(2) incluye todas las clases de establecimientos y negocios públicos a que se refiere la Ley; que la alegación en la denuncia de que el El Esquife es un club no constituye un delito, toda vez que la sección 6(2) no menciona los clubs; y que como

---

(1)Dicha sección lee en parte como sigue:

"Sección 1.—(a) En Puerto Rico no se negará a persona alguna acceso, servicio e igual tratamiento en los sitios y negocios públicos y en los medios de transporte por cuestiones políticas, religiosas, de raza o color o por cualquiera otra razón no aplicable a todas las personas en general."

(2)La sección 6(2) lee como sigue:

"Las frases 'sitio de acomodo público' y 'negocio público', entre otros significarán auditorios, salones de asamblea y otros sitios de reunión pública; barberías, cafés, salones de concierto, confiterías, tiendas de departamentos y todos los almacenes, tiendas y fábricas donde sean vendidos u ofrecidos, anunciados o desplegados para su venta al público, alimentos, medicinas, bebidas, provisiones, mercancías o servicios; parques, estadios, y todo otro sitio de diversión y recreo; elevadores, comedores, hoteles, fondas, posadas, teatros, campos atléticos, gimnasios, donde se celebren concursos o competencias de deportes y cualquier otro sitio donde sean ofrecidos al público mercaderías, servicios o diversión."

cuestión de conocimiento público un club es privado y no público, y sólo los socios pueden asistir, hecho éste que indujo a la Legislatura, con toda razón, a dejar a los clubs fuera del alcance de la ley.

Puede admitirse en seguida que la denuncia no está bien redactada, más aún por haber sido preparada por un fiscal auxiliar de distrito, y no por un lego. No obstante, estamos satisfechos en que, leída en conjunto, aduce un delito bajo la Ley núm. 131. En primer lugar, el acusado, al excepcionar la denuncia, acepta por ciertas sus alegaciones. Y dichas alegaciones están redactadas en el lenguaje de la ley, que prohibe tal discrimen en "sitios y negocios públicos". Puede admitirse con facilidad que el acusado pudo haber obtenido un pliego de particulares. Pero, a la luz de las definiciones de "negocio público" que se encuentra en la sección 6(2), no puede atacar meramente la denuncia propiamente dicha. En una situación similar, dijimos hace poco: "De suerte que cuando en la acusación, siguiendo las palabras del estatuto, se imputó al acusado que '. . . ilegal, voluntaria, maliciosa y criminalmente, poseía y transportaba sobre su persona un arma de fuego sin haber declarado la misma . . .', 'arma de fuego' tenía el significado que la propia ley le daba, esto es, pistola, revólver, escopeta o rifle de los especificados en la sección primera. Si el acusado necesitaba una más concreta especificación, pudo solicitar de la corte que ordenara se le diera, como se resolvió en el propio caso del *Pueblo* v. *Avilés,* supra, y se ratificó en el del *Pueblo* v. *Rodríguez,* supra. Pero no puede sostener ahora con éxito que la acusación no le imputó un delito." (*Pueblo* v. *Candelaria,* 60 D.P.R. 626, 629).

El argumento del apelante en cuanto a la alegación de que el acusado operaba un club significa que éste era un club privado, no incluído en las definiciones de "negocio público" que se encuentran en la sección 6(2), se aparta del hecho de que la denuncia también alega que este club es un "negocio público". Un club operado como negocio público necesaria-

mente tiene que ser un "sitio de diversión y recreo", o un "sitio donde sean ofrecidos al público . . . diversión". (Sección 6(2)).

No podemos seguir el argumento del apelante de que la Ley núm. 131 es inconstitucional toda vez que menoscaba sus derechos bajo la Enmienda Décimocuarta. Si algo hacen, ésta y otras leyes estatales similares tienden a implementar y reforzar los derechos conferidos por dicha enmienda. En verdad, por tales leyes el estado meramente prohibe a las personas afectadas por las mismas el hacer lo que el propio estado está impedido de hacer bajo la Enmienda Décimocuarta. Como indica la Anotación sobre Constitucionalidad de la legislación estatal de "derechos civiles", 49 A.L.R. 505, "Desde el 1889, se ha declarado que ya no se puede discutir el derecho de la Legislatura a aprobar estatutos de derechos civiles 'en cuanto a toda clase de negocios, de carácter público, o cuasi público operados para el acomodo, refrigerio, diversión o instrucción del público, que el estado tiene el derecho de reglamentar bajo su poder de policía, de manera que todas las clases de ciudadanos puedan gozar de sus beneficios sin un discrimen injusto.' *Rhone* v. *Loomis* (1898) 74 Minn. 200, 77 N.W. 31." A este efecto, véanse los casos en dicha Anotación y también los citados en el escolio 7, 10 American Jurisprudence 902.

*La sentencia de la corte de distrito será confirmada..*